United States v. Kurvas Secret Good morning, Your Honors. May it please the Court, I'm Eric Honig. I represent the appellants in this case. Your Honors, there's essentially two primary issues in this case. First, should the government's case have been voluntarily dismissed with prejudice, and second, should the claimants have been entitled to attorney's fees based on the dismissal. The government had originally alleged in the complaint that the defended currency belonged to a victim, another garment company that competes with one of the appellants. And so from the very beginning, the government has said this is not drug money, essentially, because in their motion for summary judgment, they dropped the drug claim and just said this is money that belongs to this third party. So the government had several options once the case was filed that they could have taken to avoid all the 18 months of litigation. They could have dismissed immediately in favor of the state court litigation. They could have asked for a stay of the forfeiture case to allow the state court litigation to proceed. They could have moved for an interpleader in the state court case and deposited the money in the state court case and allowed the parties to fight over the money there. Can I ask you just a quick question just to kind of set the table sort of back to the topic that we were on in the last argument about the standard. As I read 41, what, A2, court may voluntarily dismiss an action, quote, on terms that the court considers proper. That just sounds sort of like max deference land to me. The question is, is it an abuse of discretion? They have the discretion to, based on that kind of language, to dismiss. But the question is, is it proper in this case? After the government has litigated. Or on terms that the court, the district court, deems proper. Right. But we're not going to decide de novo whether it was proper. We're going to decide whether the district court might reasonably have deemed it to be proper. It's an incredibly broad standard, obviously. But you have to look at the entire record to determine whether the government abused its discretion. When I look at it, I see the state court litigation is in personam. Correct. The forfeiture action is in rem. Correct. I can totally understand why the government waits till it's reduced to judgment before it says, you know, this is effectively moot. You know, there's no point. But there is no such thing as effectively moot. This is a legal proceeding. That's an equitable standard. Pointless. Let's just use the word pointless. Well, you know, pointless is something a court can say. It's not a legal standard. But was it pointless? You know, saying effectively moot is saying pointless. That's essentially what the court was saying. Yeah. But in this case. It wasn't making a justiciability determination. The whole first part of your briefs seems to be pounding away at the idea that this wasn't moot. This wasn't moot. This isn't, you know, there was still a controversy here. Come on. But it was. It was because the claimants had standing. There was an active proceeding, an active case in controversy. The claimants had motions for summary judgment, a motion for summary judgment and a motion to suppress pending. They could have won the case and received all the money back under the legal standard of the complaint, what the complaint was alleging in this case. But they weren't allowed that opportunity. And we're also forgetting that Melati Sagato was not part of that state case. So to say, oh, it's pointless to allow her to bring her own claim in this case makes no sense at all. Because she was not part. She was never a defendant in that case. They never claimed that she was involved in any of that activity that is alleged in the state case. At the very minimum, Melati Sagato had an active case in controversy. She had standing and the court found that she had standing. Government did not contest that in this appeal. So to just suddenly deprive her of being able to bring her case at the very minimum makes, is an abusive discretion in this case. But she has, she has a settlement that she had to suffer 18 months of litigation and attorney's fees to be forced to work out the settlement where she got all her money back. Every penny went to her or to her attorney. So she won, essentially, as a result of 18 months of litigation. So she had no opportunity to essentially have the case reduced to judgment, the forfeiture case reduced to judgment, and get a win on a motion to suppress or win on a motion for summary judgment. Because the court took that away by buying the government's case. And so at the very minimum, we can separate them out. I represent both parties, all parties in this case, but we can separate that out easily. It should be, it should be no doubt that Ms. Sagato was not, was not, her case wasn't effectively mooted by the state court case. And that's the whole purpose of the Civil Asset Forfeiture Reform Act, is that the idea of Congress, the bipartisan Congress in passing that act, was to level the playing field between the government and claimants. And in particular, someone like Ms. Sagato, who could not afford an attorney in the beginning, so she had to, able to retain a counsel who could say, okay, I'll look towards the attorney's fees. And it wasn't a large amount that she was litigating over. So a contingent fee, for example, for a $15,000 claim when only a net attorney $5,000 for attorney's fees, that over 18 months would probably be 15, 15, 20 times that amount. And so that's the purpose of CAFRA and the attorney fee statute there, and the fee shifting statute, is to be able to allow someone like that to come into court. And there's plenty of circumstances where a person with a modest income or savings can't afford to hire counsel. And the whole purpose of that law in passing in 2000 was to give those people an opportunity to go to court and be able to at least retain counsel and get their money back, win their money back in a forfeiture case, and to be able to pay their attorney for winning the case. Did you preserve the Sagato claim of ownership argument in the district court? Of course, yes. Wasn't clear to me that you did. Oh yeah, well, that's what she claimed from the beginning. And again, she was forced to... No, in terms of why the district court should not dismiss this without prejudice. Oh, well, what happened was the court, the government moved for summary judgment, concurrently with the claim it's moving for summary judgment. In the motion for summary judgment by the government, it very that it was moving also in on the alternative to dismiss. And then at the very end, there was one line in the conclusion of this motion for summary judgment, oh, and by the way, in the alternative were moved to dismiss. Voluntary dismissal. Voluntary dismissal, right. It was very, very brief, but it was essentially a motion for summary judgment. Your response really did not say, well, you can't have that. The response didn't use the words, no, it should have been with prejudice. No, it did not use those words, but in effect, it used a word saying it's caused her irreparable damage by making her contest this case. And what happened then is the court indicated that it would grant the motion to dismiss instead of the motion for summary judgment and gave the government a motion confirming that. And so the government filed a proposed order, a notice and a proposed order. The very next day, Ms. Salgado and the other claimants filed an objection to that proposed order and a motion to dismiss with prejudice. So that was before the court issued its order. The order then the following day ignored that motion to dismiss with prejudice and just went ahead and signed the order. You filed a motion to just to alter or amend the order of dismissal. In addition to that. Right. And it didn't raise this issue. Salvato claim of ownership being a reason not to do it without prejudice. I don't remember whether that was that very specific request, but I think it was. I'm just I'm just searching, you know, the record where that claim of ownership being a reason why this should be done with prejudice as opposed to without prejudice. I was in the motion was was ever raised. That was raised in the motion to dismiss with prejudice. Very clearly raised in that motion. And that was filed before the court entered its final order. So the court could have waited and allowed the brief full briefing on that before issuing the order in the court. The district court just disregarded that the objections to the order and the motion to dismiss with prejudice, which was filed before the court entered the order. Are you suggesting that any time the government files a forfeiture proceeding, they the government could not dismiss without prejudice or just in this case? Just in this case, specifically, it should not be a per se or per se rule. And this particular I'm not saying just in this case, but in cases similar to this where there's 18 months or so or a lot of litigation where they've incurred a lot of attorney's fees and and and then they dismiss at the last minute when there's a motion for summary judgment or motion to suppress pending. But the government if the government dismissed and and in favor of an interpleader very early on, for example, of course not. That should be a voluntary dismissal without prejudice. Anything early like that. I've got you. Oh, thank you. But I reserve time. You say five minutes. Thank you, Your Honor. Mr. Matzkin. Good morning. Good morning, Your Honors. May I proceed? Yes. May it please the court. Dan Matzkin on behalf of the United States with me at council table is Nalina Subbuntum, who handled the case in district court. This case reads new life into the old cliche that no good deed goes unpunished. In the interest of conserving judicial resources and potentially the party's resources, too, the government offered to voluntarily dismiss its case without prejudice in light of the outcome of the state court proceeding. The district court acted well within its broad discretion in taking the government up on that offer and in denying the claimant's motion for prevailing party attorney's fees. I think Your Honors understand our arguments. I'll briefly respond to a couple points that my friend on the other side has made. Essentially, the argument policy-wise that I'm hearing this morning is, well, the claimants expended a lot of resources on this case, paid for attorney's fees, invested time, et cetera, and therefore the district court used its discretion by not dismissing with prejudice. But this court time and time again has rejected that argument in published cases, Pottenberg being perhaps the leading one. In that case, the court held that the mere fact that the plaintiff moved to dismiss while a summary judgment motion was pending was not sufficient to trigger clear legal prejudice warranting dismissal with prejudice. And that's exactly what we have here. So I'm happy to address any other questions that Your Honors have. We concur with Judge Pryor that the arguments with respect to Ms. Salgado have not been preserved. Okay, Mr. Matzkin, we have no further questions. Okay. In that case, we ask that Your Honors affirm the district court in all respects. Thank you. Thank you very much. I trust you don't need the full five minutes. No, I don't, Your Honor. But I find it ironic that the sole argument the government has made is that, well, we did this to preserve judicial resources. And as I opened my argument, there were several options the government had at the very beginning of the case, immediately after it filed its complaint to preserve judicial resources. One was to dismiss it immediately because there's a state court case alleging the same thing. Even if we concede that there were other options available to the government, this is the option that the government chose. And you've got to convince us that in so doing, that was an improper decision on the part of the government. Correct. So like conceding that there were certainly other options, but waiting until the resolution of the state court case, how is that improper? It's not clear on the record that they were waiting for the resolution of that case, Your Honor. That case could have been resolved early on, but it was a default judgment in that case because the problem was that they were litigating in this case at the same time, and Mr. Colorado, who was in that case, not Ms. Salgado, again, Mr. Colorado in that case ran out of money. And so he couldn't contest it, and there was a default judgment at that point. The real question is whether it was an abuse of discretion on the part of the district court when the government did move to voluntarily dismiss this matter, whether the district court abused its discretion in saying, yeah, this is pointless to continue. I'm going to grant the motion. Yeah, I'm not going to concede that that's correct regarding Mr. Colorado, but even so, it has no meaning whatsoever as to Ms. Salgado, because Ms. Salgado could have continued her case, and there was no reason to dismiss her case without prejudice. She was not part of that case, and the government made no argument as to why Ms. Salgado's case should be just thrown away, and then she got her money back. So she had to litigate for 18 months, and in current for 18 months for Ms. Salgado. And so she has an attorney debt now after 18 months, and she won the case. She got her money back. The government pushed the case, essentially forced the claimants to settle with the other party in the state court case, pushed her to settle with that case when she wasn't even part of that case. So she had to do a settlement agreement with a party that was not even part of the forfeiture case. But she got her money back in that settlement. Exactly. She got everything back in that settlement, and that's what CAFRA is about. You litigate for 18 months and don't preserve judicial resources for 18 months. You win the case by getting all your money back after 18 months. You settled the case, right? You settled while she had no choice. She got her money back. Settle is your potential claim for attorney's fees. She didn't settle with the government. The government did not prevail in the case. She prevailed against the government essentially when they dismissed the case. That's a key word there, prevailed essentially against the government. There was a settlement. You have to, under CAFRA, prove that you have substantially prevailed in the proceeding, and our case law supports that you need the necessary judicial imprimatur upon the case. Where is that? That is exactly in after the government was no longer a party. The government was dismissed out of the case, and then the settlement order was proposed to the district court. The government had no interest whatsoever left in this case, and then it reinserted its case and said, I don't like that settlement order, Judge. It gives money back to Salgado. It says her name in it. I don't like that. Thinking, oh, and this is what I'm suggesting, thinking, oh, well, if you put that in saying that she gets her money back, then she's prevailed. So district court, I don't like that. Change that proposed order that these other parties proposed and take her name out of that. And so the judge rewrote the order and, following the government's advice, rewrote it completely, placing its judicial imprimatur on that order and saying, okay, I'm going to take Ms. Salgado out of the case, and I'm going to make my own order. And so then the government took out the fact that she prevailed with her getting all her money back. And so that's your judicial imprimatur. I guess I was wrong about my prediction, Mr. Honey. I'm sorry. I'm five seconds over. I think we have your case, though. Thank you. Thank you, Your Honors. Thank you.